# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **AUNDRA DEBREL BOYKINS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:19-CV-1934-ACA** |
| | ) | |
| **JEFFERSON DUNN**, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MARC WALKER'S <u>MOTION FOR SUMMARY JUDGMENT</u>

Steve Marshall
*Attorney General*

Benjamin H. Albritton
*Assistant Attorney General*

State of Alabama
Office of Attorney General
501 Washington Avenue
Montgomery, Alabama 36130-0152
(334) 242-7300 (T)
(334) 353-8400 (F)
Ben.Albritton@AlabamaAG.gov

***Counsel for the Defendant Walker***

## **TABLE OF CONTENTS**

Introduction ................................................................................................1

Legal Standard ...........................................................................................2

Narrative Statement of Undisputed Facts .................................................3

    A.    Procedural History.........................................................................3

    B.    The Incident...................................................................................4

Argument.....................................................................................................8

    I.   Failure to Protect Claim Against Walker .....................................8

    II.   Walker is Entitled to Qualified Immunity...................................13

    III.   Official Capacity Claim Against Walker ...................................17

Conclusion ................................................................................................18

Certificate of Service ...............................................................................19

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Marc Walker ("Walker") submits this Memorandum of Law in support of his Motion for Summary Judgment (Doc. 133) and supporting Evidentiary Submission, seeking judgment as a matter of law on all claims asserted against him by Plaintiff Aundra Debrel Boykins ("Boykins").

## INTRODUCTION

Boykins is an inmate in the custody of the Alabama Department of Corrections ("ADOC"). Boykins filed this action wherein he, in part, blames Officer Marc Walker for not intervening in an altercation on December 2, 2017, allegedly instigated by another inmate, Cortez Whittington ("Whittington"), while Boykins was housed in H-Dorm at St. Clair Correctional Facility ("St. Clair"). Boykins has sued Walker in both Walker's official and individual capacities. (Doc. 65, p. 5, ¶ 11). Plaintiff also seeks to hold certain other ADOC officials individually liable for this incident and seeks injunctive relief against the current ADOC leaders. In his complaint as amended, Boykins does not claim Walker or anyone else received actual notice of any specific threat to Boykins. Boykins does, however, make the unsupported allegation that Walker slept through the incident and did nothing to intervene. As discussed herein, no evidence supports these allegations, and, in fact, the evidence shows these claims to be false. For these reasons stated below,

Correctional Officer Marc Walker respectfully requests that the Court enter judgment as a matter of law in his favor as to all claims asserted.

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).

A plaintiff cannot defeat a motion for summary judgment without an affirmative presentation of facts showing a genuine issue and may not merely rely on the general allegations of the pleadings. *Anderson*, 477 U.S. at 248. A mere "scintilla" of evidence supporting a plaintiff's position is not enough to survive summary judgment; the plaintiff must produce evidence sufficient that a jury could reasonably find for him. *Id*. at 242. A plaintiff must "go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting former Fed. R. Civ. P. 56(e)). Because

Boykins cannot produce any evidence, much less substantial, to support his claim that Walker failed to intervene, Officer Marc Walker is entitled to summary judgment.

## NARRATIVE STATEMENT OF UNDISPUTED FACTS

### A.    PROCEDURAL HISTORY

1.    Boykins is an inmate currently incarcerated serving a life sentence for the murder of a 2-year-old child and attempted murder of another female victim. (Boykins Depo., p. 16, ll. 11-12; p. 123, ll. 11-18).

2.    Boykins filed this action based upon a December 2, 2017 incident at St. Clair, involving an altercation between Boykins and inmate Whittington, wherein he alleges Walker "slept through most of the altercation; and even when he did wake, the officer did nothing to intervene or stop the assault." (Doc. 65, p. 2, ¶ 3).

3.    Plaintiff's Fourth Amended Complaint asserts a single cause of action against all Defendants for "violation of Eighth Amendment pursuant to 42 U.S.C. § 1983". Although not expressly stated, it is assumed that the sole cause against Walker is based on Boykins' allegations of Walker's failure to protect and intervene. (Doc. 65, p. 2, ¶4; pp. 23-26, ¶¶ 54-63).

4.    Boykins asserts claims against Walker "in his individual and official capacities." (Doc. 65, p. 5, ¶ 11).

5.    The Parties participated in extensive discovery, including the

production of approximately 24,500 pages of documents, thirteen (13) depositions, and two (2) expert site visits. (Doc. 123).

**B.    THE INCIDENT**

6.      The only witness with firsthand knowledge of how Whittington entered H-Dorm was Whittington himself.

7.      Around 4:36 p.m. on December 2, 2017, ADOC staff released Whittington and the other inmates assigned to P/Q-Dorm for dinner served in St. Clair's chow hall. (Whittington Depo., p. 202, ll. 4-14; p. 209, l. 16 to p. 210, l. 2).

8.      Whittington knew this dinner movement schedule involved inmates from P/Q-Dorm entering the chow hall around the same time that the inmates in H-Dorm – Boykins's housing unit – exited the chow hall and returned to H-Dorm. (Whittington Depo., p. 202, ll. 19-22; Rion Depo., Exhibit 4, ¶ 7).

9.      Rather than entering the chow hall on the afternoon of December 2, 2017, Whittington proceeded to H-Dorm via a tunnel adjacent to the chow hall. (Whittington Depo., p. 202, ll. 4-14; p. 209, l. 16 to p. 210, l. 2; p. 281, ll. 17-20).

10.     Traveling with other H-Dorm inmates returning from the chow hall, Whittington disguised himself with a "skull cap," put on two (2) jackets, and placed a "towel" around his neck to protect himself. (Whittington Depo., p. 210, ll. 4-7; p. 216, l. 11 to p. 217, l. 8; Rion Depo., Exhibit 4, ¶ 7).

11.     Whittington chose this exact time to enter H-Dorm because he knew

that the scheduled movement, his disguise, and his newness to St. Clair allowed him to travel to H-Dorm unrecognized by correctional staff. (Whittington Depo. p. 92, ll. 9-11; p. 216., l. 11 to p. 217. l. 8)

12.    Upon entering H-Dorm, Whittington passed Walker and observed him awake at his post. (Whittington Depo., p. 217, ll. 17-20; p. 221, l. 10; p. 218, ll. 14-17).

13.    At the time of the Incident, H-Dorm housed an enclosed TV room which Walker's post could monitor through several large glass windows. (Walker Depo., p. 225, ll. 4-10; Whittington Depo., p. 228, ll. 3-5; p. 230, l. 20 to p. 231, l. 2).

14.    Upon entering H-Dorm, Whittington saw Boykins in H-Dorm's TV room with his back to Whittington and Walker. (Whittington Depo., p. 231, ll. 10-18).

15.    Boykins claims he saw Walker asleep at his desk when Boykins entered the TV room, "[m]aybe five minutes" before the Incident occurred. (Boykins Depo., p. 175, l. 18 to p. 176, l. 2; p. 188, ll. 7-25).

16.    Plaintiff admits, however, he did not see Whittington enter the H-Dorm TV room or see what Officer Walker was doing at the time Whittington entered H-Dorm's TV room. (Boykins Depo., p. 175, l. 18 to p. 176, l. 25).

17.    Whittington supplies the only firsthand knowledge of what Walker was

doing as Whittington entered the dorm.

18.    Once Whittington entered H-Dorm TV room, Whittington and Boykins began to fight. (Whittington Depo., p. 241, ll. 8-21; Boykins Depo., p. 170, l. 17 to p. 171, l. 20).

19.    The fight "surprised" Boykins, who had no warning of Whittington's actions. (Boykins Depo., p.176, l. 22 to p. 177, l. 22).

20.    Boykins never warned anyone of the possible altercation with Whittington. (*Id*.).

21.    Boykins has no reason to believe that Walker was aware that Whittington was going to attack Boykins. (Boykins Depo., p. 228, ll. 11-24).

22.    Observing the ensuing altercation between Boykins and Whittington in H-Dorm's TV room, Walker immediately used his radio to summon other officers for assistance. (Walker Depo., p. 224, ll. 5-14; Whittington Depo., p. 243, ll. 11-20).

23.    During the fight, Boykins claims he saw Walker sitting at his desk, and "I think he was grabbing his radio." (Boykins Depo., p. 201, l. 14 to p. 202, l. 14).

24.    Whittington states he saw Walker radio for other officers during the incident. (Whittington Depo., p. 243, l. 2 to p. 244, l. 7).

25.    The fight between Whittington and Plaintiff spilled out of H-Dorm's TV room into the open dormitory. (Whittington Depo., p. 244, ll. 8-13; Boykins Depo., 182:22-24).

26.     Within minutes, four (4) correctional officers responded to Officer Walker's call for backup and escorted Boykins and Whittington to the infirmary for medical evaluations. (Walker Depo., p. 224, ll. 6-17; Whittington Depo. p. 255, l. 18 to p. 256, l. 9).

27.     Boykins does not know how long it took officers to respond or how many officers responded. (Boykins Depo., p. 203, l. 7 to 204, l. 7).

28.     Boykins's expert, Joseph Rion ("Rion"), criticized Walker for not stopping Whittington from entering H-Dorm and for not "interven[ing]" in the fight by deploying OC (pepper spray). (Rion Depo. Exhibit 1, p. 5).

29.     Rion admits, however, that Correctional officers are required to use their judgment and discretion in deciding what actions to take. (Rion Depo., p. 180, ll. 12-16, p. 181, l. 19 to p. 182, l. 4).

30.     Rion admitted, however, that Walker called for backup, and "the fact that the responding staff were able to get to Mr. Boyington [sic] and get him some treatment may be why he's still here." (Rion Depo., p. 239, ll. 3-7).

31.     Rion even went further and testified that "when Officer Walker called for assistance and the responding staff came in and made sure that Inmate Boykin [sic] got medical treatment, I think that was an example of security operations going well." (Rion Depo., p. 239. ll. 3-7; p. 362. ll. 2-11).

32.     Boykins testified that he did not think that Walker wanted to see

Boykins harmed. (Boykins Depo., p. 227, ll. 6-8).

33.     Boykins testified that he has never seen anything from Walker that indicated Walker wanted to see Boykins harmed. (Boykins Depo., p. 228, ll. 2-5).

**ARGUMENT**

**I.     FAILURE TO PROTECT CLAIM AGAINST WALKER**

The fact that Boykins was attacked by another inmate is not in dispute. Despite this, Boykins has no claim for failure to protect against Walker. Boykins claimed in his complaint that Walker slept through the incident and did nothing to intervene once the altercation began. Both allegations have been shown to be false. Walker's motion for summary judgment on Boykins's Eighth Amendment failure to protect claim is due to be granted.

The matter of failure-to-protect has been discussed in *Doe v. Georgia Dept. of Corrections* and explained as follows:

> The Eighth Amendment prohibits cruel and unusual punishment; prison officials violate that amendment when they are deliberately indifferent to a substantial risk of serious harm to inmates. *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1027 (11th Cir. 2001). As we have explained, *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1977, 1982-83, 128 L.Ed.2d 811 (1994), sets out objective and subjective elements that must be shown to establish an Eighth Amendment violation. About the objective elements, a prisoner must first show that an objectively substantial risk of serious harm existed; and once it is shown that an official is aware of this objectively substantial risk, the official must respond to this risk in an objectively unreasonable manner. *See Marsh*, 268 F.3d at

8

> 1028-29. About the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 114 S.Ct. at 1979. As *Farmer* explains, "[t]he Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Id.* Failure to protect from an objectively significant risk that should have been-but was not-perceived, is no infliction of punishment under the Eighth Amendment. *Id.* So, to show an Eighth Amendment constitutional violation, the summary judgment evidence, viewed in the light most favorable to Plaintiff, must show (i) facts presenting an objectively substantial risk to inmates and awareness of these facts on the part of the officials charged with deliberate indifference; (ii) that the officials drew the subjective inference from known facts that a substantial risk of serious harm existed; and (iii) that the officials responded in an objectively unreasonable manner.

245 Fed. Appx. 899, 902-903 (2007).

Boykins must produce some evidence that would permit a factfinder to determine that Walker had a "'(1) subjective knowledge of a risk of serious harm; [and] (2) disregard[ed] . . . that risk; (3) by conduct that is more than [gross] negligence.'" *Id.* (quoting *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005) (final alteration in original)). The risk of serious harm must be a "'substantial'" one. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

Boykins has shown no evidence that would indicate a substantial risk existed prior to the incident, that once the incident began that Walker disregarded any risk,

or that Walker's conduct was more than gross negligence. It is undisputed that Walker had no warning that the incident would occur prior to Whittington's surprise attack on Boykins. Once the incident occurred, it is undisputed that Walker immediately called for backup. Boykins own expert saw this immediate intervention as both an example of good security and potentially lifesaving. Plaintiff's sole criticism is not that nothing was done, as claimed in the complaint, but rather his complaint is based on his belief that more should have been done. This simply does not amount to conduct that is more than gross negligence.

As stated above, the Eighth Amendment's prohibition on cruel and unusual punishment imposes upon institutional officers the duty to "take reasonable measures to guarantee the safety of the inmates" in their custody. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal quotation marks and citations omitted). "'In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to constitutional stature.'" *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (quoting *Wright v. El Paso Cty. Jail*, 642 F.2d 134, 136 (5th Cir. 1981)).

A constitutional violation occurs when institutional officials' deliberate indifference to a known danger or risk exposes an inmate to objectively, "sufficiently

serious" harm. *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *see Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) ("When officials become aware of a threat to an inmate's health and safety, the [E]ighth [A]mendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection.").

A danger or risk is "known" only if the institutional official is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he . . . draw[s] th[at] inference." *Farmer*, 511 U.S. at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not," is not sufficient to establish liability on the part of the official. *Id.* at 838. Furthermore, there must be a "'strong likelihood' of injury, 'rather than a mere possibility,' before an official's failure to act can constitute deliberate indifference." *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) (quoting *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990)).

Once a plaintiff establishes that an institutional official knew of a substantial danger or risk to an inmate, a plaintiff must then demonstrate that the official was deliberately indifferent to that risk. "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842.

Deliberate indifference requires "a state of mind more blameworthy than negligence." *Id*. at 835. Finally, plaintiff must produce sufficient evidence that the defendant's deliberate indifference to a known danger or risk caused plaintiff's constitutional injury. *See Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). "Prison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence. However, in order for liability to attach, the officers must have been in a position to intervene." *Terry v. Bailey*, 376 F. App'x 894, 896 (11th Cir. 2010) (citing *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998)). Plaintiff has the burden of demonstrating that the defendant was in a position to intervene but failed to do so. *Ledlow v. Givens*, 500 F. App'x 910, 914 (11th Cir. 2012) (citing *Hadley v. Gutierrez*, 526 F.3d 1324, 1330-31 (11th Cir. 2008)).

Boykins alleges that Walker "slept through most of the altercation; and even when he did wake, the officer did nothing to intervene or stop the assault." (Doc. 65, p. 2, ¶ 3). The undisputed evidence shows both accusations are false. While Boykins maintains that Walker was asleep "five minutes before" the incident, an assertion Walker denies, Boykins has produced no evidence that Walker was asleep or inattentive when Whittington entered the dorm or when the incident began. Likewise, the undisputed evidence has shown that Walker acted immediately by calling for backup. Whittington concealed his appearance and entered H-Dorm at a

12

time when inmates were returning to the dorm. Whittington did so to avoid being detected by Walker. Whittington watched Walker closely to avoid detection. Once Whittington attacked Boykins by surprise, he saw Walker immediately call for backup. Officers responded quickly to the call for assistance. Walker's response was seen by Boykins's expert as both good security and potentially lifesaving. Walker's motion for summary judgment on Boykins's Eighth Amendment failure to protect claim is due to be granted.

## II.   WALKER IS ENTITLED TO QUALIFIED IMMUNITY

Boykins sued under 42 U.S.C. § 1983. He contends that Walker violated the Eighth Amendment's prohibition on cruel and unusual punishment when he failed to protect him. Boykins must show that the violation was contrary to clearly established law to show Walker is not entitled to qualified immunity. *See Farmer v. Brennan*, 511 U.S. 825, 832–33, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (explaining that the Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates") (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)). Boykins says that Walker, the on-duty H-Dorm correctional officer, was asleep, failed to prevent the fight and failed to intervene once it began.

This matter is similar to the facts in the case of *Washington v. Warden,* 847 Fed. Appx. 734 (11th Cir. 2021). In *Washington*, a state prisoner who had been

stabbed by fellow inmates brought § 1983 action against prison officials, alleging failure to protect prisoner in violation of the Eighth Amendment. The allegations against the correctional officer on duty at the time were that ". . . Milner, the on-duty Building H correctional officer, failed to prevent the fight when it was obvious one was about to occur and to break it up once it began . . .." *Washington*, 847 Fed, Appx. at 736.

The 11th Circuit in *Washington* first noted that qualified immunity protects governmental defendants performing discretionary functions from suit in their individual capacities "unless, at the time of the incident, the 'preexisting law dictates, that is, truly compel[s]' the conclusion for all reasonable, similarly situated public officials" that the defendants' actions violated the plaintiff's federal rights. *Marsh v. Butler Cnty, Ala.*, 268 F.3d 1014, 1030–31 (11th Cir. 2001) (en banc) (quoting *Lassiter v. Alabama A&M Univ.*, 28 F.3d 1146, 1151 (11th Cir. 1994) (en banc)) (alteration adopted). The Court went on to say that ". . . Washington must show (1) that the officials violated a constitutional right and (2) that the right was clearly established at the time of the alleged violation. *Marbury v. Warden,* 936 F.3d 1227, 1236 (11th Cir. 2019). For a right to be clearly established, the plaintiff may either identify precedents with materially similar facts or show that the violation was so obvious that every reasonable officer would know that his actions were unconstitutional. *Corbitt v. Vickers*, 929 F.3d 1304, 1311–12 (11th Cir. 2019); *see*

*Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)." *Washington*, 847 Fed, Appx. at 737.

The *Washington* Court went on to note that the Eighth Amendment prohibits cruel and unusual punishments. That prohibition requires prison officials to take reasonable measures to guarantee the safety of the inmates and protect prisoners from violence at the hands of other prisoners, citing F*armer,* 511 U.S. at 832-33, 114 S.Ct. 1970, and pointed out that not every injury suffered by one prisoner at the hands of another, however, gives rise to constitutional liability for prison officials. "[O]nly the unnecessary and wanton infliction of pain implicates the Eighth Amendment," *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970. "[A] prison official must have acted with deliberate indifference to a substantial risk of serious harm. Thus, to prevail on an Eighth Amendment claim, a plaintiff must show "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Marbury*, 936 F.3d at 1233 (quoting *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016)).

In determining that the officer on duty was entitled to qualified immunity, the 11th Circuit looked at the facts in the record. Washington claimed that Milner was deliberately indifferent to a substantial risk of harm by failing to prevent the fight when it was evident that one was about to break out and further indifferent by failing to attempt to break up the fight once it began. The Court pointed out that "prison

officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Rodriguez v. Sec'y for Dept. of Corrs.*, 508 F.3d 611 (11th Cir. 2007) (quoting *Farmer*, 511 U.S. at 844, 114 S.Ct. 1970). The facts in *Washington* showed that the officer may have known that there was a substantial risk of harm to Washington immediately before the stabbing. Boykins shows no such knowledge on Walker's or anyone else's part. After the fight in *Washington* began, the officer ordered the inmates to stop and radioed for backup. Backup arrived and the fight was over. The 11th Circuit saw no cases in which they have found that an officer responding in a materially similar way was held liable under the Eighth Amendment. The 11th Circuit, therefore, found that while the Correctional Officer may have known of a substantial risk of harm to Washington, it was not clearly established that her actions were unreasonable, and thus deliberately indifferent. The officer was therefore entitled to qualified immunity. *Washington*, 847 Fed, Appx. at 739.

Boykins provides even less evidence of deliberate indifference than the plaintiff in *Washington*. It is undisputed that Walker was acting within the scope of his discretionary authority at the time of the incident. *See Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) ("discretionary authority" includes "all actions of a government official that (1) 'were undertaken pursuant to the performance of his

duties,' and (2) were 'within the scope of his authority'") (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988)). Therefore, to defeat qualified immunity, Boykins must establish a genuine issue of material fact whether Walker violated his constitutional rights.

There is no evidence that Walker was aware that a substantial risk of harm existed to Boykins. The undisputed evidence shows that the attack by Whittington was unforeseen. Likewise, the undisputed evidence shows that once the attack began, Walker acted immediately by calling for backup. The plaintiff's expert agrees that the decisions to call for backup or to use appropriate force are discretionary and must be made often in split seconds. He further commended the action taken by Walker. No evidence has been established by Boykins that the actions taken by Walker were unreasonable.

## III.   OFFICIAL CAPACITY CLAIM AGAINST WALKER

To the extent Boykin's constitutional claim for money damages is brought against Walker in his official capacity, his claim warrants dismissal under the sovereign immunity doctrine. The Eleventh Amendment to the United States Constitution bars 42 U.S.C. § 1983 claims against the state or an agency of the state. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Likewise, Eleventh Amendment immunity also bars claims for money damages brought against officials and employees of state entities sued in their official capacities. *Id.*

at 101-02. Based on the foregoing, the court should grant Walker's motion for summary judgment on Boykin's claims against Walker in Walker's official capacity for monetary relief.

<u>CONCLUSION</u>

Based on the undisputed facts, argument and authorities contained herein, and in Marc Walker's Motion, as well as the evidentiary materials included in the Evidentiary Submission, Marc Walker respectfully requests that the Court grant him summary judgment.

Respectfully submitted,

STEVE MARSHALL
ATTORNEY GENERAL

/s/ *Benjamin H. Albritton*
Benjamin H. Albritton
ASB-0993-R67B
*Assistant Attorney General*
*Attorney for Defendant Walker*

Office of the Attorney General
501 Washington Avenue
Montgomery, Alabama 36130-0152
334-242-7300 (T)
334-353-8400 (F)
Ben.Albritton@AlabamaAG.gov

18

## CERTIFICATE OF SERVICE

I hereby certify that I have on February 14, 2023, filed the foregoing with the Clerk of the Court, using the CM/ECF filing system which will send notification of the same to all counsel of record.

/s/ *Benjamin H. Albritton*
Benjamin H. Albritton
*Assistant Attorney General*